VICKSBURG & YAZOO CITY TELEPHONE CO. *v.* CITIZENS' TELEPHONE CO. ET AL.

1. CORPORATIONS.  *Sale of property.  Creditors.  Equity.  Unliquidated damages.*

 Where one corporation transfers all of its property to another, and ceases to do business, its liabilities are enforceable in equity against the property in the hands of the purchasing corporation, if the transfer is not *bona fide*, and the jurisdiction of equity is not affected by the fact that the proceeding involves incidentally the ascertainment of unliquidated damages. *Morrison* v. *American Snuff Co., ante* 330, cited.

2. SAME.  *Bona fides of sale.  Allegation.  Equity pleading.*

 The allegation in a creditor's bill that a corporation has sold all of its property and ceased to do business, thus necessarily rendering itself unable to perform a contract with the complainant, of which the purchasing corporation had notice, is equivalent to charging that the transfer was not *bona fide*.

3. SAME.  *Consolidation.*

 That one corporation has transferred all of its property to another, and ceased to do business, does not constitute either a consolidation or a merger, but is attended by the results of consolidation in so far as the rights of its creditors are concerned, and its property may, in equity, be subjected to their demands while in the hands of the purchasing corporation.

FROM the chancery court of Warren county.

HON. WILLIAM C. MARTIN, Chancellor.

The Vicksburg & Yazoo City Telephone Company filed its bill in chancery against the Citizens' Telephone Company and the Cumberland Telegraph and Telephone Company, seeking, among other objects, to subject the property of the Citizens' Telephone Company, which had all been conveyed to the Cumberland Telephone Company, to the payment of such damages as had been sustained by complainant by reason of the breach on the part of the Citizens' Telephone Company of a certain contract, which it had made with the Standard Telephone Construction Company, complainant's assignor. The bill alleges that on August 17, 1897, the Standard Telephone Construction Company entered into a contract with the Citizens' Telephone Company, wherein it was stated to be the purpose of the said Standard Telephone Construction Company to construct and maintain long-distance telephone lines diverging from Vicksburg, Miss., to points in Mississippi and Louisiana; and by said contract the Citizens' Telephone Company granted to the Standard Telephone Construction Company the use of any of its poles within the corporate limits of Vicksburg for the express and sole purpose of placing thereon its wires necessary for connecting its lines with its said telephone exchange in the city of Vicksburg free of any charge or rental therefor; that the Citizens' Telephone Company should furnish to the Standard Telephone Construction Company, free of charge, suitable space in its exchange for a telephone, which was to be directly connected with the long-distance line of said Standard Telephone Construction Company; that the Standard Telephone Construction Company should keep its lines in good repair and working order, and that the said contract should be binding upon the successors or assigns of either or both of the parties thereto, and should be in force and effect for the period of ten years; that the Standard Telephone Construction Company placed its wires upon the poles of the Citizens' Telephone Com-

pany within the city of Vicksburg, and established a telephone
and other suitable apparatus in the exchange of the Citizens'
Telephone Company, and that both of the parties to the con-
tract fully complied for a long time with all the terms and stip-
ulations of said contract; that the complainant became the suc-
cessor and assignee of all the property of the Standard Tele-
phone Construction Company and all of its rights and interests
under said contract, and was duly recognized and accepted by
the Citizens' Telephone Company as such legal successor and
assignee of said company, and that for a long time it operated
and maintained the property so acquired by it in conjunction
with the exchange of the Citizens' Telephone Company, and
that in all particulars the terms and stipulations of said contract
continued to be observed and complied with by it and the said
Citizens' Telephone Company; that the property, with the priv-
ileges and appurtenances thereto belonging, so acquired by
complainant, are valuable and costly, being worth at least
$6,000; that the Citizens' Telephone Company had sold and
transferred to the Cumberland Telephone & Telegraph Com-
pany all of its poles, wires, instruments and appliances used by
it and necessary for the maintenance and conduct of its tele-
phone business in the city of Vicksburg; that it has closed its
exchange in the city of Vicksburg, and retired from business;
that the Cumberland Telephone Company is now exercising all
the privileges and franchises in so far as the maintenance and
conduct of the telephone business is concerned which had there-
tofore been enjoyed and exercised by the Citizens' Telephone
Company; that the Citizens' Telephone Company, except in so
far as its mere naked franchise is concerned, has become merged
into and consolidated with the Cumberland Telephone & Tele-
graph Company; that the Cumberland Telephone & Telegraph
Company, at the time and before the date of its contract with
the Citizens' Telephone Company, by which it acquired the
property of the same, was fully advised of the nature and char-
acter of the contract entered into between the Standard Tele-

phone Construction Company and the Citizens' Telephone Company, of which, as stated, the complainant is owner by assignment; that by virtue of the premises and of the contract, complainant, as assignee, is entitled to maintain its wires as now placed upon the poles owned by the Citizens' Telephone Company, and recently sold by them as aforesaid, and to have suitable space in the exchange of the Cumberland company for a telephone to be connected with the lines of complainant, and to have its lines connected with the exchange of said Cumberland company; that complainant is ready and anxious to comply with all the obligations assumed under said contract, but that the said Cumberland Telephone & Telegraph Company refuses complainant the privilege of so doing.

The bill avers that complainant is entitled to a decree commanding and enjoining the Cumberland Telephone & Telegraph Company to execute and perform all of the conditions, stipulations and obligations imposed by the contract of August 17, 1897; that, if mistaken in this, complainant is entitled to a decree declaring that the attempted disposition of the property of the Citizens' Telephone Company by it to be null and void, and directing that the same be restored to it by the Cumberland Telephone & Telegraph Company, and that it be required to resume the telephone business in the city of Vicksburg, and to fully execute and perform all the stipulations, conditions and obligations of said contract; that, if it should appear that, under the circumstances above stated, or for other reasons, a decree against the Citizens' Telephone Company for the specific performance of said contract should not be made, that complainant is entitled to have the damages which it has sustained by reason of the breach of said contract by the Citizens' Telephone Company assessed by the court, and a decree rendered therefor, and that it is entitled to have an account taken of the property unlawfully transferred to it and acquired by the Cumberland Telephone & Telegraph Company from the Citizens' Telephone Company, and the value thereof ascertained, and to

have the Cumberland Telephone & Telegraph Company adjudged to hold the same as trustee, and to have a decree against the Cumberland Telephone & Telegraph Company for the damages so assessed and ascertained, to the extent of the value of the property unlawfully acquired from the Citizens' Telephone Company. The prayer of the bill was for a decree directing and commanding the Cumberland Telephone & Telegraph Company to execute and perform all of the conditions, stipulations and obligations imposed upon and assumed by the Citizens' Telephone Company by virtue of said contract; that, if mistaken in this, complainant prays that the contract of sale between the Citizens' Telephone Company and the Cumberland Telephone & Telegraph Company, and the transfers and conveyances of property thereunder, be declared null and void; that the Cumberland Telephone & Telegraph Company be directed to restore said property to the Citizens' Telephone Company, and that said last named company be directed and commanded to execute and perform all conditions, stipulations and obligations assumed by virtue of said contract; that, if it should appear that specific performance should not be decreed against either of said companies, then complainant prays that this court will cause to be assessed the damages sustained by it by reason of the breach of said contract by the Citizens' Telephone Company, and that a decree be rendered against same therefor, and that an account be taken of the property transferred by the Citizens' Telephone Company to the Cumberland Telephone & Telegraph Company, and its value ascertained, and that a decree be rendered in favor of complainant against the said Cumberland Telephone & Telegraph Company for the value of said property so ascertained to satisfy and discharge the decree against the Citizens' Telephone Company, and for general relief. To this bill the Cumberland Telephone & Telegraph Company interposed a demurrer. The demurrer was sustained by the court below, the bill dismissed, and complainant appealed to the supreme court.

*Catchings & Catchings*, for appellant.

We affirm that while there has been no consolidation between the Citizens' company and the Cumberland Company in the sense of there being a merger of the franchises of the two companies, yet there has in fact been a consolidation of all of the business and property of the two companies, so that one of them has ceased to own any property whatever, or to conduct any business whatever, while the other has become the owner of all the property of both of the companies, and transacts all the business formerly carried on by the two companies. We insist that this must be a consolidation. We are aware that the consolidation of corporations, in a technical sense, takes place usually by virtue of a contract under which one corporation becomes merged in another, or two or more corporations become united in such manner as to form a new and distinct corporation. But courts will look to the substance of a transaction, and not the form, and, so far as the public are concerned, the facts of this case make as perfect a consolidation as if there had been a strictly technical one.

There were two corporations engaged in the telephone business in the city of Vicksburg, whereas there is now but one. There were two sets of poles, wires, transmitters, exchanges and employees engaged in the telephone business in the city of Vicksburg, whereas all property so used now belongs to, and all employees are controlled by, a single corporation. If the Citizens' company had transferred its franchises, there would have been, even technically considered, a consolidation, and yet such a transfer, so far as the public is concerned, would not have left the situation in anywise different from what it now is. We are also aware that consolidations which are lawful and cannot be assailed can only be entered into where the power is conferred by the legislature. But while this is true, it has been held that where a consolidation has been attempted without authority of law, it does not lie in the mouths of either of the corporations engaged in the transaction to deny the consol-

idation. Creditors, or the state, might upset a consolidation unlawfully entered into if they should choose to do so, but where the state has not complained, and where creditors choose to accept the consolidation as lawful, it will be so treated by the courts. This bill is filed in the alternative, as the court will perceive, and for the purposes of its first contention the appellant avers that the effect of the transaction between the Citizens' company and the Cumberland company was to consolidate the telephone business in the city of Vicksburg, and all property employed therein, so as to vest the same entirely and solely in the Cumberland company. Where a consolidation takes place, the consolidated company, in the absence of an express stipulation to the contrary, becomes liable to perform the contracts and engagements of the constituent companies. If, therefore, this can be treated as a consolidation, so far as the record shows, the Cumberland company is liable upon the contract between appellant and the Citizens' company, and should be compelled to perform the same. We have found no reported case in which such facts as are shown by this record have been presented to the court for decision. It is not surprising that this is so, inasmuch as the rule is firmly established that a public or quasi public corporation cannot sell or assign without legislative authority such of its property as it must have to enable it to execute the purposes for which it was created. We very much question whether a public corporation has ever before, without legislative authority, attempted so completely and utterly to disable itself as the Citizens' company has done. Telephone companies are quasi public corporations, the same as railways, water, gas, telegraph and similar corporations, and cannot disable themselves by disposing of their franchises or any property essential to their exercise. *Brunswick Gas Light Co.* v. *United Gas Co.*, 35 Am. St. Rep., 386, and note on page 405. For example, telephone companies may exercise the right of eminent domain. Beach on Corp., 399.

All decisions, therefore, regarding the power of public corporations to consolidate, and as to the effect of consolidation, are applicable to telephone companies.   There is a distinction between the franchise to be a corporation and the franchise to build, own and manage a railroad.   The latter is not necessarily a corporate right inasmuch as an individual might own and operate a railroad.   *Coe* v. *Columbus R. R. Co.*, 75 Am. Dec., 518 and note.   In this case the Citizens' Telephone Company did not sell to the Cumberland Telephone Company its franchise to be a corporation.   This was not necessary to effect the purpose of the parties, for the Cumberland company already had a franchise to operate a telephone system in the city of Vicksburg.   The purpose of the contract undoubtedly was that the Citizens' company should withdraw from the telephone business in the city of Vicksburg, and that all of its equipments and business should become the property of the Cumberland company.   It divested itself of the power to maintain a telephone system, transferred to the Cumberland company everything which could be of value to it, and has wholly withdrawn from the telephone business.   For all practical purposes it became merged into the Cumberland company. A consolidation or merger may be effected by a variety of methods.   Where there is legislative authority it must be followed of course.   Any transaction, however, must be a merger or consolidation which results in one corporation disabling itself by transferring to another all of its property and then retiring from business, so that where there were two corporations in the beginning, but one remains.   When one corporation goes entirely out of business in this manner, with no arrangement respecting its liabilities, the corporation into which it is merged, and which acquires all of its property is answerable for them.   In such case the debts of the retiring corporation become, by implication, obligations of the corporation into which it is merged.   *Berry* v. *K. C., F. S. & M. R. R. Co.*, 39 Am. St. Rep., 381; *R. R. Co.* v. *Shirley*, 54 Tex., 125;

Jones on Railroad Securities, (2 Ed.) note on sec 364; *Louisville R. R. Co.* v. *Boney*, 117 Ind., 501.

The appellant is in the same position precisely it would have been in if a consolidation had been effected under statutory authority.    This being so, the liability of the Citizens' company follows as an incident to the transaction and becomes, by implication, an obligation of the Cumberland company.    It has aided and abetted the Citizens' company in disabling itself so that it could not carry out its contract with appellant, and in equity it must be held to have taken the place of the Citizens' company in this regard.

If the court should be of the opinion that we are mistaken as to the foregoing, then, on behalf of appellant, we insist that the transfer by the Citizens' company to the Cumberland company is absolutely null and void; that if possible the Cumberland company should be required to restore the status, and the Citizens' company then required to perform its contract with appellant, and that if conditions have become so that this is impossible, the damages sustained by appellant should be assessed and the Cumberland company held liable to the extent of the value of the property received by it from the Citizens' company.

In *Thomas* v. *West Jersey R. R. Co.*, 101 U. S., 71, it is expressly declared that a corporation cannot lease or alienate any franchise or any property necessary to perform its obligations and duties to the state without legislative authority, and that a contract for such purpose is null and void.    The same doctrine was announced in *Railroad Co.* v. *Brown*, 17 Wall., 445.

In *Abbott* v. *Johnson R. R. Co.*, 36 Am. Rep., 572, it was held that a railroad incorporated under the general laws cannot by lease absolve itself from the obligation to discharge its corporate duties.

In *Richardson* v. *Sibley*, 11 Allen, 65, and in Pierce on Railroads, 496, it is held that a railroad cannot alienate any

property essential to the performance of its duties.    See also *Richards* v. *R. R. Co.*, 44 N. H., 136; Beach on Private Corporations, sec. 362; Green's-Brice's *Ultra Vires*, 120; *Pittsburg* v. *Keokuk*, 131 U. S., 371.

It is said in the case of *Chicago Gas Light Co.* v. *Gas Light Co.*, 2 Am. St. Rep., 131: "There may be cases where a corporation may abandon a public work for reasonable causes, but this is a very different thing from disabling itself by contract from the performance of a duty to the public."

If a corporation becomes so financially embarrassed that it cannot proceed further, it should go into liquidation and have its affairs wound up.    In the absence of statutory authority, it can make no contract which will disable it from discharging its public duties.    *Brunswick Gas Light Co.* v. *United Gas Co.*, 35 Am. St. Rep., 386, and note on page 405.

According to the foregoing authorities, the sale by the Citizens' company to the Cumberland company was fraudulent in law and utterly void.

If the court finds the case such that a decree for specific performance can be rendered neither against the Citizens' company nor the Cumberland company, then it should furnish relief to appellant by having his damages assessed in this action and rendering a decree therefor against the Cumberland company up to the full value of the property so fraudulently transferred to it.    To avoid circuity of action, the court can ascertain the damages sustained by appellant in this proceeding and give him full relief by a suitable decree against the Cumberland company.    Moreover, the conveyance to the Cumberland company being fraudulent in law, we submit that, under § 503 of the code of 1892, and under the prayer for general relief, this bill may be treated as one to vacate a fraudulent conveyance.

*Smith, Hirsh & Landau*, for the appellee.

Specific performance on the part of the Cumberland Telephone & Telegraph Company of the contract entered into by

and between the Citizens' Telephone Company and the complainant, the Vicksburg & Yazoo Telephone Company, can, under no doctrine applicable to the laws of specific performance, be granted. The Cumberland Telephone & Telegraph Company was not a party to that contract; never assumed any obligation with reference thereto; and, for this reason, if for no other, we say that this contract cannot be specifically enforced to its full extent, as prayed for. Certainly under no circumstances can it be enforced to the extent of allowing the complainant to place and maintain its telephone exchange and other apparatus proper to enable it to maintain in the exchange of the Cumberland Telephone & Telegraph Company's exchange. This would be to make a new contract for complainant, and with a party with whom it has never contracted.

Again, complainant sets out facts and alleges that these facts show that the sale of the Citizens' Telephone Company to the Cumberland Telephone & Telegraph Company was void, and yet it asks a court of equity to enforce this contract, which it avers violates public policy, against the Cumberland company.

The complainant is not entitled to an assessment of damages sustained by reason of the breach of the contract of August 17, 1897, by the Citizens' company, for the following reasons: It is not averred in the bill that the Citizens' company is to-day insolvent and could not respond to a judgment in a court of law for damages for the breach of said contract. Again, it is not averred in said bill that the consideration paid by the Cumberland company to the Citizens' company is not held by the Citizens' company to respond to damages or any other liability which that company may be subjected to. It is not even shown that there has been any disposition of the assets of the Citizens' company to defraud complainant or any other creditor. In other words, it is not shown by the bill that there is not adequate remedy at law for the complainant.

Notwithstanding the averments that the Citizens' company sold and transferred to the Cumberland company, etc., it is

nowhere shown that the consideration was not large enough to more than respond and pay the complainant's claim and that this fund is not now intact.

WHITFIELD, C. J., delivered the opinion of the court.

This case is largely controlled by the opinion this day delivered in the case of *Morrison* v. *Snuff Co.*, *ante* 330 (30 So. Rep., 723). That was an action at law by attachment, the plaintiff garnishing a debt due to the constituent company, which debt had been transferred to the consolidated company by the deed of consolidation. This is a bill of equity, one of whose purposes is to subject the property of the Citizens' Telephone Company, which had all been conveyed to the Cumberland Telephone Company, to the payment of such damages as the complainant had sustained by reason of the breach, on the part of the Citizens' Telephone Company, of the contract which it had made with the complainant's assignor. The bill proceeds upon the theory, in this aspect of it, that the complainant had a right to reach such property so transferred as being held by the Cumberland Telephone Company, impressed with a trust for the creditors of the Citizens' Telephone Company, which had transferred its property to the Cumberland Telephone Company. As pointed out in the opinion referred to, the remedy in equity is appropriate. We may cite, in addition to the authorities therein cited on this point, 6 Am. & Eng. Enc. L., 820. The consolidated company, where there has been a consolidation, may be sued either at law or in equity, but the fact that it may be sued at law does not make the legal remedy exclusive, nor deprive the creditor of his right to proceed in equity, on the theory of a trust, to reach the property of the constituent company in the hands of the consolidated company. 1 Thomp. on Corp., sec. 375. The action of the court below was entirely proper, so far as regards the prayer for specific performance. But there are three separate phases to this bill, and three prayers, one appropriate to each phase, and the bill is clearly

maintainable in that phase of it which seeks to subject the property of the Citizens' Telephone Company (the transferer) in the hands of the Cumberland Telephone Company (transferee), for the reason that the bill expressly charges, and the demurrer admits the charge to be true, that the Cumberland Telephone Company had full knowledge of the terms of the contract between the Citizens' Telephone Company and the complainant's assignor, and of the breach of said contract by the Citizens' Telephone Company, its transferer ; in other words, the bill expressly charges and the demurrer admits that the Cumberland Telephone Company was not a *bona fide* purchaser. And where there has been neither a consolidation nor a merger, but a mere sale by one corporation of its property to another, that sale, if permitted by the constitution and the laws as not being against public policy or otherwise illegal, and if made for a valuable consideration, in good faith, will pass the property of the selling corporation to the purchasing corporation free from claims of mere simple contract creditors. In every such case the same rule obtains as obtains in the case of a sale by an individual to another individual. This is all made perfectly plain in 1 Thomp. on Corp., sec. 377; 6 Am. & Eng. L., 819, note 5. It would be necessary in such case that the complainant should state in his bill that there was fraud, or that the transfer was not made for a valuable consideration, or that the defendant was not a *bona fide* purchaser. See *Powell* v. *Railroad Co.*, 42 Mo., at top of page 66. This bill meets these requirements by charging that the purchase was not made *bona fide*. The property here has not passed into the hands of a *bona fide* purchaser from the consolidated company, and is, therefore, chargeable in equity with the debt (if any shall be established) here asserted. See 1 Thomp. on Corp., sec. 378. The bill charges that all the property of every kind which had belonged to the Citizens' Telephone Company, except its corporate franchises, had been transferred to the Cumberland Telephone Company, and that the Citizens' Telephone Company had gone

entirely out of existence, and had become absolutely defunct, and that such was the well understood purpose of the transfer. It is true that the bill does not aver any technical consolidation or merger. It shows no legislative authority for a consolidation. There seems to be a great confusion as to the differences between consolidation and merger and sale. Rightly understood, there never can be a consolidation of corporations except where all the constituent companies cease to exist as separate corporations, and a new corporation, to wit, the consolidated corporation, comes into being. A merger, rightly understood, is not the equivalent of consolidation at all, but exists where one of the constituent companies remains in being, absorbing or merging in itself all the other constituent companies. This bill, whilst charging no consolidation or merger when properly understood, nevertheless does charge that the dealing between these two corporations has resulted practically, to all intents and purposes, in exactly the same conditions, so far as creditors of the Citizens' Telephone Company and its property are concerned, as would have resulted had there been a consolidation. We think the same principle which applies in favor of the simple contract creditor against a consolidated corporation, enabling him to subject, in the hands of that consolidated company, property of a constituent corporation received by the consolidated company (such constituent corporation being debtor of the simple contract creditor), will apply in cases like this. The Citizens' Telephone Company could not give away its property to the prejudice of the complainant; and an attempted sale by it of this property to the Cumberland Telephone Company, the latter not being a *bona fide* purchaser, cannot avail to defeat the equitable rights of the complainant asserted in this bill, the property being still in the possession of the Cumberland Telephone Company, not sold to a *bona fide* purchaser from it. Nor does it make any difference that the complainant has asserted here, not a simple contract debt, but a claim for unliquidated damages, arising out of a breach of contract on the part of the Citizens'

Telephone Company. The bill is not, in this aspect, one to have unliquidated damages ascertained in a court of chancery as its sole scope and purpose. The ascertainment of these damages is a mere incident to the subject-matter of equitable cognizance conferring the chancery jurisdiction, to wit, the enforcement, on the theory of a trust, of complainant's equitable right to satisfaction out of the property of the Citizens' Telephone Company in the hands of the Cumberland Telephone Company. It is that subject-matter which gives the jurisdiction. The ascertainment and award of the damages is a mere incident in the exercise of that jurisdiction. This precise point is settled in *Railroad Co.* v. *Boring*, 51 Ga., 582, and in many other cases.

*The decree is reversed and the cause remanded, with leave to answer in thirty days from the filing of the mandate in the court below.*