HOLLOWAY & McRANEY CO. *v.* LEX BRAME, JR., TRUSTEE, ETC.

1. COPARTNERSHIP. *Corporation. Bankruptcy. Fraudulent Conveyance.*
   Where a copartnership transferred all of its assets to a corpora-
   tion formed to carry on the business in which the copartnership
   had been engaged, the stockholders being the late partners, in-
   terested in the same proportion as they had been in the co-
   partnership, and the corporation assumed the debts of the co-
   partnership, it is liable to the creditors of a bankrupt on ac-
   count of a fraudulent conveyance by him to the copartnership,
   shortly preceding its formation, to the same extent as the
   partners.

2. SAME. *Parties to suit.*
   In a suit by the trustee of the bankrupt to enforce such liability
   the members of the copartnership are not necessary parties,
   since the judgment against the corporation affords them pro-
   tection against any further liability to the bankrupt's creditors.

3. SAME. *Fraud in fact. Consideration. Credit to fraudulent purchaser.*
   Where a sale by an insolvent, within four months of bankruptcy
   was fraudulent in fact, the purchaser is liable for the value of
   the property sold without credit on account of the consideration
   for the fraudulent sale.

FROM the chancery court of Covington county.

HON. STONE DEAVOURS, Chancellor.

*McWillie & Thompson* and *McIntosh Bros.,* for appellant.

The case of *Morrison* v. *American Snuff Company,* 79 Miss.,
330, was much relied upon by the appellee's counsel in the court
below, but it has nothing whatever to do with this case. That was
a case of the consolidation of corporations. No such question is
presented here, there being no such thing as a consolidation be-
tween a copartnership and a corporation. There can be no such
thing as a merger of a copartnership into a corporation. The co-
partnership of Holloway & McRaney is not shown to have been

dissolved; the corporation was a creation, and it became an arti-
ficial person. It hath nothing whatever to do with the previous
transactions of its stockholders. It purchased from them the
stock of goods which they had on hand and it assumed the lia-
bilities, but it carried on an independent business and a new
business. Certainly Brame is not entitled to a personal decree
against the corporation. He ought to have sued, if anybody,
the individuals who composed the copartnership.

If the corporation could in any event be held liable, then the
members of the copartnership are necessary parties to a suit
against the corporation. All of this was plead in the court below,
but was ignored, and it is now presented to this court, and we
earnestly insist that the final decree is erroneous as against the
corporation for the reasons above stated, and for the reason, too,
that Holloway and the two McRaneys were not made parties to
the suit. The demurrer to the amended bill ought to have been
sustained for all the reasons above stated.

It is laid down, 1 Clark and Marshall on Private Corpora-
tions, sec. 112, p. 340, that "When persons who have been doing
business as a partnership become incorporated, the corporation
and the former partnership are distinct in the law, and the
rights and liability of the one are not the rights and liabilities
of the other. And it can make no difference that the members
of the corporation and those of the partnership are the same,
or that the corporation is formed for the express purpose of
continuing the business carried on by the firm. *Georgia Co.* v
*Castleburg,* 43 Ga. 789; *Frank* v. *Drenkhahn,* 76 Mo., 508.
The same is true when any other unincorporated association be-
comes incorporated."

If the corporation agreed with the partnership to assume the
partnership debts, it does not follow that the corporation is lia-
ble for the torts and wrongs of the partnership. The partner-
ship, if liable at all to Brame, was not liable on contract. But
if so liable a creditor of the partnership cannot sue upon the
promise to assume such debts, because of a want of privity with

the contract.   If mistaken in this, surely the purchasers were necessary parties to the suit.   The complainant cannot establish a debt against the partnership otherwise than by suing the debtors.

The corporation cannot be liable if the partnership perpetrated the fraud charged, and it cannot be liable of course, if the partnership did not do so.   Assuming that the partnership be liable, let us consider the situation if the partners should be sued by Brame, or by Shia's creditors who have not proven their debts in bankruptcy.   Could the partners plead the decree in this case in bar of such a suit?   If not the decree appealed from must be reversed.

Surely, if the corporation be liable at all, it is not subject to greater responsibility than that to which the partnership might have been subjected, and even the partnership would have been entitled to credit on the value of the goods for the debt from Shia to it, extinguished by the sale, and for the actual money paid to Shia for the goods.

*W. W. Mounger,* for appellee.

Whenever a party has the possession of the goods of another fraudulently he is liable to the owner for the value of the same and the owner may replevy or sue in a common law court for a conversion.   Bishop on Contracts, sec. 226.   On the question of fact as to whether or not there was fraud on the part of Holloway & McRaney, the partnership and the notice of the same by Holloway & McRaney Company, the corporation, the chancellor decided for appellee on both points.   Under the bankruptcy law of 1898, the title to the goods in controversy was in the trustee, Brame.   He therefore had a right to sue for them and to sue in a chancery court because he prays for a discovery and an accounting.   Clearly, on these principles alone the case ought to be affirmed.

The corporation was to pay all the liabilities of the copartnership and the decree ought to be affirmed also on this ground.

*Brame & Brame* and *Watkins & Easterling,* on same sides.

There was no merit in the demurrer. It is unnecessary to aver or show that the individual members composing the partnership of Holloway & McRaney, which was merged into the corporation, were insolvent, or that they had gone out of business. All this was wholly immaterial. The bill shows that the partnership was merely merged into the corporation and that it undertook to pay all the debts and obligations of the firm. Under these circumstances the assets of the former partnership could be subjected to the demand asserted in this case even in an action at law. *Morrison* v. *American Snuff Co.,* 79 Miss., 330.

Clearly the corporation is liable in equity. *Telephone Co.* v. *Telephone Co.,* 79 Miss., 341.

But further, the averment is that the corporation assumed all the liabilities of the partnership. Therefore, this made the obligation asserted here the original debt of the corporation. Even the partners themselves can insist that the corporation shall be first made liable. *Lee* v. *Newman,* 55 Miss., 365; *Sweatman* v. *Parker,* 49 Miss., 19; *Jones* v. *Hughes,* 66 Miss., 413.

Aside from the allegations of the bill to the effect that the corporation assumed all the debts and liabilities of the firm, there was no consideration for the transfer of the assets from the partnership to the corporation which would constitute the latter a *bona fide* purchaser and therefore entitled to hold the same. *American Sugar Refining Co.* v. *Fancher, Assignee,* 145 N. Y., 552; s. c. 27 L. R. A., 757.

The fraud of Shia being established, the burden of proof was then on the purchasers to show that they purchased without notice. 14 Am. & Eng. Enc. Law, 490, and numerous authorities cited. *Richards* v. *Vacarro,* 67 Miss., 516.

A sale of goods made out of the ordinary course of business is a badge of fraud, and, being shown, it is a question of fact for the jury or court to determine whether or not the sale should be vitiated as fraudulent. 14 Am. & Eng. Enc. Law, 516.

Means of knowledge, with the duty of using them, are deemed equivalent to knowledge itself.   21 Am. & Eng. Enc. Law, 584.

It is assigned for error that the court should have credited the defendant with $604.40 paid Shia by Holloway & McRaney and with $236.32, the amount of their debt against him.   But this involves the whole case.   It assumes that the transaction was fair and honest.   As well, let the parties take the goods in violation of the bankruptcy law and the general rule against fraudulent conveyances, as to put them in *statu quo*.   The court having found that the sale was fraudulent in fact, the fraudulent vendee cannot ask to be reimbursed.   *McLean* v. *Letchford,* 60 Miss., 169; *Ricketts* v. *Jolliff,* 62 Miss., 440; *Hamblet* v. *Harrison,* 80 Miss., 118.

CALHOON, J., delivered the opinion of the court.

The bill of appellee Brame, as trustee of the bankrupt estate of one Shia, charges that in December, 1901, Shia was insolvent, and, being so, sold his mercantile stock to what was then a mere partnership styled Holloway & McRaney, and was adjudged bankrupt in the February following, the sale being less than four months before the adjudication; that this sale was upon a conspiracy between him and them to defraud his creditors; that he delivered to them $10,000 worth of goods for a nominal sum, which goods he had bought on credit, which credit he got by exaggerating his rating as a merchant, in which they collusively joined; and the prayer is for discovery, and that Holloway & McRaney be charged as trustees *ex maleficio* for the value of the goods.   An amended bill sets up further that on the day of the alleged fraudulent sale, December 18, 1901, Holloway & McRaney were organizing themselves into a corporation, which was completed December 31, 1901, and that Shia owed the firm, and the transfer of the goods was a performance denounced by the bankrupt act; that the corporation was simply a merger of the firm; that its incorporators were the same people, that it got all the firm property, and assumed all the firm debts; and the

prayer is for discovery and for decree holding the corporation liable for any debt paid the firm as a preference, and charging it with the value of the goods so fraudulently conveyed. The defendant corporation filed a general denial of the charge of fraud, without particular answer to particularized charges, and then filed to the whole bill a general demurrer on the grounds detailed: (1) That the bill shows that it is not a proper party; (2) that it fails to show that the members of the old firm are insolvent; (3) because the bill shows that the acts complained of were those of a solvent partnership, etc. This demurrer was very properly overruled. The answer admits that on December 18, 1901, the date of the transfer of the goods, Shia did owe the partnership, but says it was only to the amount of $236.32; denies knowledge of Shia's insolvency, but admits that he paid this debt with goods, which it says was at reasonable valuation, this being true as to other goods then bought of him to the amount, they say, of $604.40; and admits that the corporation assumed the debts of the firm; and it pleads "in bar" that the members of the firm, all solvent, are not made parties. The answer denies fraud, and declines to make discovery. Evidence was heard, and on it the chancellor decreed the sale fraudulent, and on the case made this court will not disturb his conclusion. Mr. Shia seems to have been lost in the mix-up. He is not heard from. The morning after the night of the sale he disappeared from the usual scene of his operations and customary haunts. It was shown that the corporation, styled Holloway & McRaney Co., was composed of only the identical persons who composed the partnership of Holloway & McRaney, with the same interest of each, and with no other change of name or place of business than the addition of the word company to the partnership name; and that the only apparent change ever made was that sixteen days after the incorporation stock was taken, and a new system of books opened. On these new books the assets of the firm were charged up to the corporation, which simply kept possession of them, including the unsold part of the goods the firm had got

from Shia. The decree is against the corporation for the amount of the value of the goods.

As against then existing creditors, represented by the trustee of Shia's estate in bankruptcy, no title passed by the fraudulent transaction between him and the firm, both being *mala fide,* and the liability of Shia to the extent of the value of the goods delivered is enforceable in equity against the firm receiving them. and against the corporation, composed only of the same persons, taking the assets with full knowledge and assuming the liabilities of the firm. *Vicksburg* v. *Citizen's Telephone Co.,* 79 Miss., 341; s. c., 30 South., 725; s. c., 89 Am. St. Rep., 656—a milder case than this. Shia was liable to his creditors. The firm who fraudulently got his goods became liable to his creditors for their value; and the corporation, composed of the members of the firm only, which took the goods of the firm without consideration and with full notice, is also liable. If the contention of counsel were to prevail, in a case like this, that the court should have credited on the value of the goods the account of the firm against Shia for which it took goods, and the cash it paid him at a very inadequate valuation, it would be a legal condonation of a gross fraud designed by both parties to enable Shia to cheat his creditors. In fact, these were the very incentives to the accomplishment of the fraud, and without which it would not have been perpetrated. Neither law nor reason assents to the contention. Neither so encourages actual fraud. Both denounce it. There is nothing, as we think, in the contention that the members of the firm of Holloway & McRaney were the parties to be sued, on the ground that the other creditors might sue the firm, and not the corporation, about the same thing, and that the firm then could not set up the recovery for the corporation. It could set it up. Brame, Jr., has recovered as trustee for all the creditors of Shia, the value of all his goods which went from him to the firm and from the firm to the corporation, and none of the creditors can get from either the value of the goods any more.

*Affirmed.*