MANVILLE COVERING COMPANY *vs.* MATTIE P. BABCOCK.

DECEMBER 13, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Equity. Compensatory Damages.*

While equity will decline to take jurisdiction where the relief sought is merely the award of compensatory damages, yet such damages may be awarded by equity in addition to or as an incident of some other special equitable relief.

(2) *Equity. Breach of Trust in Foreclosing Mortgage. Compensatory Damages.*

A foreclosure under a power of sale mortgage in violation of the power is a breach of trust on the part of the mortgagee which is peculiarly cognizable in equity, and the fact that the damages claimed by the mortgagor are compensatory and unliquidated is not alone sufficient to debar the mortgagor

from equitable relief, and in a bill seeking such relief the mortgagee will be required to account for the fair market value of the property at the time of the sale; but the prayers of the bill claiming damages for injury to the business, reputation, and credit of the mortgagor are foreign to the proper scope of a bill for an accounting, and will not be entertained.

BILL IN EQUITY for an accounting and damages for breach of trust in foreclosing mortgage. Heard on appeal from decree of Superior Court, and decree vacated in part.

DUBOIS, J. This is a bill in equity brought by the Manville Covering Company, a corporation, and Stephen W. Budlong, of Providence, against Mattie P. Babcock, for an accounting and for damages done to the complainants by foreclosing a mortgage upon real estate of the complainants in an illegal manner.

Heard upon the respondent's demurrer to the bill.

The facts in the case admitted by the demurrer are as follows:

Said Budlong, being the owner of certain real estate in Providence, mortgaged the same to the respondent as security for his note for seven thousand dollars and subsequently conveyed said real estate, subject to said mortgage, to the Manville Covering Company. Interest on this note was paid to October 6, 1903, and two hundred dollars was paid on account of the principal. The mortgage deed provided that it might be foreclosed and the property sold if the interest was not paid within ten days after it became due.

The interest due in advance on October 6, 1903, not having been paid on October 8, 1903, the respondent advertised the property for sale on October 29, 1903.

On October 29, 1903, the complainants offered to pay the interest due October 6, with all expenses, which offer was declined, and the property was sold on that day, October 29, under pretended foreclosure of the mortgage, against the protest of said Budlong.

Thereafter it was discovered that the sale was not in accordance with the terms of the mortgage deed, and the respondent proceeded to foreclose her mortgage and advertised the property on December 17, 1903, and thereafter on Dec-

ember 21, 28 and 31, and on January 4 and 7, and again sold the property on said January 7, 1904.

The only persons present at said last-mentioned sale were the auctioneer who conducted the sale, one Newell, the agent of the respondent Mattie P. Babcock, the purchaser at the first sale, Eugene F. Phillips, and the complainant, Budlong, and the only bid was made by said Phillips, the purchaser at the first sale, and for the same amount, viz., $7,175.

The bill alleges, in paragraph 19, that, by reason of the first-mentioned sale at public auction, in contravention of the terms and conditions of the mortgage deed, and by reason of the second sale at public auction, in order to correct and avoid the error that had been made by illegally conducting the first sale in violation of the terms and conditions of the mortgage deed, a cloud had been thrown upon the title to the premises and a doubt as to its validity had become current, in consequence whereof the premises did not bring their fair market value at either sale, and intending bidders and purchasers were deterred from attendance at said second auction sale.

The bill alleged further, in paragraph 18, that, although according to the terms of the mortgage deed, in case of foreclosure sale upon default to comply with the terms of the said mortgage deed, the mortgagee was to account to said Budlong, his heirs and assigns, for all sums received over and above the amount due, yet the said mortgagee, said Mattie P. Babcock, the respondent, had neglected and still neglected so to do.

The complainants prayed that the respondent may be ordered to account with these complainants for all sums received at said sale at public auction and for the excess paid to her by the complainants over and above the interest due on said mortgage note, that she may be ordered to pay to these complainants whatever sums may thus be found to be due to these complainants, including damages to their business, reputation, and credit and loss in their business resulting from the above recited grievances and illegal actions, and including the difference between the fair market value of said

premises and the amount received at said auction sale; and for general relief.

The respondent answered the bill of complaint, denying that she had refused to account, yet with her answer filing an account, tendering payment of the amount she admitted was due, $127.47, and paying it into the registry of the court.

The respondent then incorporated the following demurrer in her answer:

"And this respondent further avers and claims that although she has answered fully to the allegations of said bill of complaint, there is in said bill of complaint contained, no matter or thing entitling the complainants or either of them to relief in a court of equity other than a demand for an accounting from the respondent for the proceeds of the sale of said premises, and she prays the same advantage hereof, as though she had interposed a formal demurrer on these grounds, to said bill of complaint.

"And the respondent submits that having fully accounted for the proceeds of said sale and having paid the amount due upon such accounting into court for the benefit of the complainants, unless the correctness of said accounting is questioned by the complainants, this bill should be dismissed."

This demurrer raises the question whether the complainant, who has a right to proceed in equity for an accounting upon a foreclosure sale under the mortgage, can also recover, in the same suit in equity, damages to its business, reputation, and credit, and the difference between the fair market value of said premises and the amount received at said auction sale, resulting from the above recited grievances and illegal actions.

The demurrer admits the damages alleged, claiming that in equity the complainant can ask only for an accounting of the money received, and that to obtain damages for the injury to its business, reputation, and credit, and for the difference between the fair market value of said premises and the amount received at said auction sale, the complainant must be relegated to its action or actions at law.

The case was argued upon this demurrer in the court below, and on March 30, 1906, a rescript was handed down holding

that, so far as damages under paragraphs 19 and 20 of the bill are concerned, they are merely compensating and unliquidated and recoverable only in a court of law.

The complainants claimed that there was still a balance due them, and agreed with the defendant upon the amount thereof without going to a master to take and state an account, and upon being paid the amount thus agreed upon, a decree was entered June 6, 1907, directing the payment to the complainants of the amount paid into the registry of the court, and it was so paid. Whereupon the complainants gave the respondent a receipt for the same, containing the clause following: "It being understood, however, that said moneys are paid and are received without prejudice to the complainants' right to appeal from the decision and decree of the Superior Court to the Supreme Court in order that all questions arising under the bill of complaint herein and the demurrer hereto may be determined in said Supreme Court."

Thereupon a final decree was entered dismissing the bill of complaint, from which decree the complainants have appealed to this court.

(1) At the outset we find that the complainant Budlong is without interest in the premises and is not entitled to the relief prayed for. We therefore proceed to the consideration of the claim of the complainant Manville Covering Company.

While it is true that the award of mere compensatory damages, which are usually unliquidated, is a remedy peculiarly within the province of the law courts, and that therefore a court of equity will decline to take jurisdiction in such a case— 1 Pomeroy Eq. Jur. § 237—it is also true that such damages may be awarded by a court of equity in addition to or as an incident of some other special equitable relief. The damages are not claimed in this case as merely compensatory, but are claimed to be the direct result of the respondent's breach of a trust wherein the respondent was trustee and the complainant was *cestui que trust*, to wit: a power of sale mortgage of real estate in which the respondent was the mortgagee, and in which real estate the complainant was the owner of the equity of redemption as grantee of the mortgagor. Whatever

may be the law elsewhere, in this State the mortgagee in a power of sale mortgage of real estate is treated as trustee for the owner of the equity of redemption.   As stated by Brayton, J., in *Hoffman* v. *Anthony & others*, 6 R. I. p. 288: "The mortgagee, so long as he held the estate in mortgage, and every successive assignee while he held it, became a trustee, therefor, with power to sell and appropriate to himself so much only as might be necessary to discharge the debt due from the mortgagor.   He was to sell no more · than might be reasonably necessary to discharge the debt.   If he sold more from any necessity, he was to hold the balance above the mortgage debt for the mortgagor, and if any assets remained unsold, it remained to the mortgagor.

"The mortgagor did not require and had not provided, that before making sale of the estate or any part thereof, any notice should be given to him of such intended sale.   The only notice provided for was that by advertisement in a public newspaper, and which was intended to invite purchasers.   This was its great and only purpose; and as the mortgagor had provided no notice to himself upon which he could give a wider circulation to the advertisement, was of the utmost importance to him.   He had a deep interest in having such notice given as would be likely to attract purchasers who would be willing to give a fair price for the estate.   This being the purpose of the notice, it imposed a duty upon the assignee to see that the notice was given, such as would reasonably accomplish the end designed.   This duty is expressed by the Chancellor in the case of *Matthie* v. *Edwards*, 33 Eng. Chan. R. 465, in reference to a notice under a like power in this language: 'A mortgagee having a power of sale cannot, as between himself and the mortgagor, exercise it in a manner merely arbitrary, but is bound to exercise some discretion not to throw away the property, but to act in a business-like manner with a view to obtain as large a price as may fairly and reasonably, with due diligence and attention, be under the circumstances attainable.' "   .  .  .   (p. 290)

"It is no matter of wonder that with such a notice as this no other persons attended this sale, as the evidence shows

they did not, than such as derived their information from other sources than this advertisement,—none but such as were specially invited to attend, viz., the auctioneer, the holder of the mortgage, one of the original mortgagors having then no title, and one other person specially requested to bid for the defendant Rebecca Anthony. Nor is it strange that the estate should, under the circumstances, have been struck off for one third of its fair value. Such a notice would be likely to produce such a result, or at least was not adapted to produce any other. In giving such notice it cannot with propriety be said that the assignee, in the exercise of the power and trust with which he was clothed, acted in a business-like manner with a view to obtain as large a price as might reasonably be obtained under the circumstances with due diligence and attention on his part, or in common fairness towards his *cestui que trust.*"

But as explained by Durfee, C. J., in *Reynolds* v. *Hennessy,* 15 R. I. 215, a mortgagee, in exercising the power, is a *quasi,* not a technical, trustee.

The bill alleges, and the answer and demurrer admit, that the mortgage deed provided that the mortgage might be foreclosed and the property sold if the interest was not paid within ten days after it became due; that, the interest due on October 6, 1903, not having been paid on October 8, 1903, the respondent advertised the property for sale on October 29, 1903; that on October 29, 1903, the property was sold, against the protest of the complainant, on the premises, notwithstanding the refusal of the complainant to allow an entry thereon for that purpose. To proceed to a foreclosure by sale, in violation of the power of sale, is to commit a breach of the trust therein reposed, an offence which is peculiarly cognizable in equity.

But the respondent argues as follows: "The accounting having been made when the answer was filed, and furthermore, the balance due thereunder, as claimed by the plaintiffs, having been paid, this matter is eliminated. The plaintiffs having obtained the relief to which they were entitled when the bill was before the Superior Court, it is now before this court only

on the other allegations referring to the prior unauthorized sale.

"These allegations make out a simple claim for damages in an action of trespass. The gist of the statement is that the defendant, without authority, entered upon the plaintiffs' mortgaged premises and assumed to sell the property, and that this resulted in throwing a cloud upon the title to the property and in an injury to the plaintiffs' business.

. "The plaintiffs have for these alleged wrongs a full and adequate remedy at law, and their complaint is not cognizable by a court of equity. The defendant is entitled to a trial by jury.

"The plaintiffs' two claims, one for an accounting for the proceeds of the foreclosure of a mortgage, and the other for damages for a trespass upon real estate, have absolutely no connection except that the real estate alleged to have been trespassed upon is the same as that which was foreclosed under the mortgage."

The argument that the complainant, as assignee of the mortgagor, can have an action at law against the mortgagee for a trespass upon the real estate mortgaged has no foundation in law. A mortgage conveys the title to possession to the mortgagee, and, when forfeited, the whole title at law. Kimball v. Lockwood, 6 R. I. 138. The possession of a mortgagor in the mortgaged premises may be terminated, at the will of the mortgagee, by entry or action. Waterman v. Matteson, 4 R. I., 539.

The complainant is therefore without the remedy at law suggested by the respondent. Moreover, an illegal sale, constituting a breach of trust, is not dependent upon the place where the sale was made, whether on or off the premises sold.

(2)   The Superior Court proceeded on the theory that the damages claimed were merely compensatory and unliquidated, and that, under the decision in Barnes v. Roy, 27 R. I., 534, such damages should be recovered in a court of law. So far as the case of Barnes v. Roy is concerned it is sufficient to say that the damages therein claimed did not arise out of any equitable relation existing between the parties, but were simple, and compensatory. It is therefore plainly distin-

guishable from the present case, which is that of a *cestui que trust* complaining against its trustee for breach of the trust and asking for compensation in damages for such breach.

The distinction between a *quasi* and a technical trustee is of little importance in the present case, which differs materially from that of *Reynolds* v. *Hennessy, supra,* which was a bill in equity, filed in November, 1881, for an account of the surplus over and above a mortgage debt, with interest and expenses, received by the respondent, as mortgagee of the complainant, May 7, 1872. In the answer the plea of the statute of limitations was set up, and the case was heard chiefly on the sufficiency of that plea. As the bill was for money had and received, it was decided that *indebitatus assumpsit* would lie to recover the same as well as a bill in equity for an account; that, as the remedies were concurrent, the statute of limitations applied, whereas if the trust had been technical, so as to have been exclusively cognizable in equity, it would not have been affected by the statute.

The bill in this case has been seasonably brought and is not a bill solely for money had and received, but is one which demands an account of money which the respondent ought to have received, and which but for her misconduct she would have received, at mortgagee's sale. *Indebitatus assumpsit* will not lie for such a claim; it is purely equitable.

"Equity looks upon that as done which ought to be done. This is a very important maxim, and one which lies at the foundation of many of the great doctrines in equity. For the purpose of reaching exact justice equity will frequently consider that property has assumed certain forms with which it ought, in justice, to be stamped, or that parties have performed certain duties which they ought, in justice, to fulfill; and will regulate the enjoyment and transmission of estates and interests accordingly. Thus, where a testator has imperatively directed land to be sold and turned into money, equity will consider that the *conversion* (as it is termed) has taken place from the instant of the testator's death, and the subsequent devolution of the property will be governed by the rules which control, not real, but personal estate. And so, as

it is the duty of a trustee to deal with the trust property for the benefit of the *cestui que trust,* a profit made in his own name will be regarded as made for the benefit of the trust estate. This maxim will be found running through the whole system of equity jurisprudence." Bisph. Eq. 5th Ed. § 44.

The fact that damages claimed are compensatory and unliquidated is not alone sufficient to debar the complainant from equitable relief.

As stated by Whitfield, C. J., in *Telephone Co.* v. *Telephone Co.,* 79 Miss. 341, 354: "Nor does it make any difference that the complainant has asserted here, not a simple contract debt, but a claim for unliquidated damages, arising out of a breach of contract on the part of the Citizens' Telephone Company. The bill is not, in this aspect, one to have unliquidated damages ascertained in a court of chancery as its sole scope and purpose. The ascertainment of these damages is a mere incident to the subject-matter of equitable cognizance conferring the chancery jurisdiction, to wit, the enforcement, on the theory of a trust, of complainant's equitable right to satisfaction out of the property of the Citizens' Telephone Company in the hands of the Cumberland Telephone Company. It is that subject-matter which gives the jurisdiction. The ascertainment and award of the damages is a mere incident in the exercise of that jurisdiction."

The power of sale is coupled with the duty of exercising the same in a provident way, with a due regard to the rights and interests of the mortgagor in the surplus money to be produced by the sale.

The penalty for violation of such duty is accountability, to the owner of the equity of redemption, for the fair market value of the property, as though it had been sold in strict accordance with the power of sale.

We find, therefore, that the complainant is entitled to an account, from the respondent, of the fair market value of the equity of redemption at the time of the mortgagee's sale.

The other claims for damages for injury to the business, reputation, and credit of the complainant are matters foreign to the proper scope of a bill for an account.

The cause is remanded to the Superior Court, with direction to vacate so much of the decree, dismissing the bill, entered in said cause on the sixth day of June, 1907, as relates to the complainant Manville Covering Company, and to ascertain what was the fair market value of the mortgaged property on the seventh day of January, 1904, the time when said property was sold by the respondent, and what loss, if any, the complainant has sustained, through depreciation in the value thereof, caused by the respondent's violation of duty, and to require the respondent to account for and to pay over to the complainant the surplus, if any, of such market value found to be due upon such accounting, less the amount received by the complainant June 5, 1907, and for further proceedings.

Blodgett, J., dissents.

*Amasa M. Eaton*, for complainant.

*Gardner, Pirce, & Thornley*, for respondent.